## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-KA-01696-SCT

*VERBRA CONERLY a/k/a 'RICK'*

*v.*

*STATE OF MISSISSIPPI*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 09/04/1998 |
| TRIAL JUDGE: | HON. R. I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MORRIS SWEATT, SR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATS |
| DISTRICT ATTORNEY: | RICHARD LAWRENCE DOUGLASS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REMANDED - 05/18/2000 |
| MOTION FOR REHEARING FILED: | 1/12/2000 |
| MANDATE ISSUED: | 6/8/2000 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Verbra Conerly was convicted of burglary in the Marion County Circuit Court on August 26, 1998, and sentenced to twenty-five (25) years in the custody of the Mississippi Department of Corrections, with fifteen (15) years suspended pending successful completion of substance abuse classes. Conerly appealed his conviction to this Court, and we reversed and rendered, finding no probable cause existed for the issuance of the arrest warrant. The State filed its motion for rehearing, asking this Court to reconsider our decision. On motion for rehearing, the motion is granted, the original opinion is withdrawn, and this opinion is substituted.

### FACTS

¶2. On September 23, 1997, Dornis Lenoir left her home in Marion County, Mississippi, with the doors closed and the windows down. Upon returning, she discovered that someone had gone through her home and thrown many of her belongings on the floor. A radio amplifier and a ring were missing. Lenoir's neighbors named Verbra Conerly as the person responsible for the break-in. These neighbors did not tell Lenoir any facts known to them which would have supported their suspicions. Lenoir notified the proper authorities, and an arrest warrant was issued for Conerly.

¶3. Investigator Clint McMurray, acting upon the warrant, arrested Conerly on November 30, 1997. After

being held in a jail cell for two days, Conerly was given his *[Miranda](#)* warnings and immediately questioned by McMurray. During this questioning, Conerly signed a waiver of rights form and confessed to stealing both the amplifier and ring. McMurray was the only person who witnessed Conerly's statement.

¶4. At trial, McMurray testified that prisoners in the holding cell are not allowed telephone calls except for calling an attorney. Conerly, however, contends that he spoke with his mother by telephone prior to his confession. Conerly's mother, Lexie Conerly, testified that she talked to Verbra while he was in jail and told him of a threat that was made to her over the telephone. Lexie allegedly told him that an unidentified man had threatened to burn down the Conerly house with her in it unless Verbra admitted to burglarizing Lenoir's home. Accordingly, Conerly testified that his confession was made only because he was in fear of his mother being killed and his home being burned. Aside from his confession, there was no other evidence linking Verbra Conerly to the burglary.

## STATEMENT OF LAW

### I.

### WHETHER THE ARREST WARRANT WAS BASED ON PROBABLE CAUSE

¶5. The State asserts this Court erred in our original opinion when we addressed the legality of the arrest warrant for the first time upon appeal. In its motion for rehearing, the State contends that "there was no issue at trial or on appeal, in any manner or form, relating to the sufficiency of probable cause or the legality of the arrest." In his reply brief, however, Conerly did address the legality of his arrest warrant by asserting that the only basis for the warrant was the uncorroborated affidavit given by Lenoir. Ordinarily, "we will not consider issues raised for the first time in an appellant's reply brief." *[Sanders v. State](#)*, 678 So. 2d 663, 669 (Miss. 1996). However, plain errors of sufficient constitutional importance are likely to affect the outcome of a case and may be addressed for the first time by this Court upon appeal. "This Court has recognized an exception to procedural bars where a fundamental constitutional right is involved." *[Maston v. State](#)*, 750 So. 2d 1234, 1237 (Miss. 1999); *see* **Smith v. State**, 477 So. 2d 191, 195 (Miss. 1985). Consequently, we will once again visit this issue.

¶6. Conerly asserts that the arrest warrant was issued based on nothing but "raw hearsay." This Court has previously held that an arrest warrant may be based on hearsay. **Walker v. State**, 192 So. 2d 270, 273 (Miss. 1966). There must be underlying facts and circumstances, however, which support the hearsay so as to allow a neutral and detached magistrate to find the existence of probable cause. **Id.** at 273. Uncorroborated and unsubstantiated hearsay will simply not suffice. In the present case, the arrest warrant was based exclusively on an affidavit, which reads in relevant part as follows:

> On September 23, 1997, Dornis Lenoir, came home and discovered that 1 diamond ring and a car radio amplifier [were] missing from her residence at 18 Conerly Lane. The house was locked and the house was entered into from a window. **Dornis Lenoir was advised by some neighbors down the road that the person who was responsible for the missing items was Ricky Conerly.**

(emphasis added). Lenoir's neighbors, however, did not witness the incident nor did they provide any factual data to support their suspicions. From the record before us, it appears that the affidavit was based on nothing more than uncorroborated rumors.

¶7. To obtain an arrest warrant for a felony, either with or without a warrant, a police officer must have (1)

reasonable cause to believe that a felony has been committed; and (2) reasonable cause to believe that the person proposed to be arrested is the one who committed it. *Henry v. State*, 486 So. 2d 1209, 1212 (Miss. 1986). "Arrest warrants or search warrants shall be issued only by the judge after a judicial determination that probable cause exists based upon the affidavit or other evidence before the court." Miss. Unif. R.P.J.C. 3.03. Furthermore, in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court established a "totality of the circumstances" standard for determining the existence of probable cause: The task of the issuing magistrate is simply to make a practical, common-sense decision based on all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information. We adopted the *Gates* "totality of the circumstances" test in *Lee v. State*, 435 So. 2d 674, 676 (Miss. 1983).

¶8. Moreover, this Court has defined probable cause as follows:

> Probable cause is a practical, non-technical concept, based upon the conventional considerations of every day life on which reasonable and prudent men, not legal technicians, act. It arises when the facts and circumstances within an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.

*Strode v. State*, 231 So.2d 779, 782 (Miss.1970). Perhaps more simply put, "probable cause means more than a bare suspicion but less than evidence that would justify condemnation." *Wagner v. State*, 624 So. 2d 60, 66 (Miss. 1993). Taking into consideration these definitions of probable cause, along with the "totality of the circumstances" standard adopted in *Lee*, we find that the information contained within the record before us is insufficient to establish probable cause. If the sole reason for the issuance of the arrest warrant was Lenoir's testimony of what her neighbors' "thought", then no probable cause existed to support the issuance of the warrant. Suspicion alone does not meet the constitutional standard of probable cause. *Henry v. State*, 486 So. 2d at 1212. Lenoir's neighbors told her that they "thought" Conerly was responsible for the break-in. From the record, it appears that the neighbors' testimony was nothing more than rumor and was not supported by any other evidence. Moreover, the record does not indicate that Conerly was even seen in the area on the day of the break-in.

¶9. It is important to note, however, that Conerly did not raise this issue at trial, nor did he raise the issue in his initial brief upon appeal. Therefore, the trial judge was never given the opportunity to rule on the legality of the arrest warrant. Consequently, facts and information, supportive of a finding of probable cause may be absent from the record before this Court. As a result, we remand this case to the Marion County Circuit Court for a determination of whether sufficient probable cause existed to render the Conerly's arrest warrant valid.

## II.

### WHETHER CONERLY'S CONFESSION SHOULD HAVE BEEN EXCLUDED UNDER THE "FRUIT OF THE POISONOUS TREE" DOCTRINE

¶10. Assuming, but not deciding, that Conerly's arrest was illegal, the question thus becomes whether his subsequent confession should be rendered inadmissible under the "fruit of the poisonous tree" doctrine. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

¶11. In Mississippi, *Miranda* warnings, alone and per se, do not always make a confession admissible. ***Bolton v. State***, 530 So. 2d 1360, 1362 (Miss. 1988). However, we are also mindful that a confession given while in custody following an illegal arrest is not per se inadmissible. ***Coleman v. State***, 592 So. 2d 517, 521 (Miss. 1991). Consequently, "a confession's admissibility must be decided on the facts of each case." ***Bolton***, 530 So. 2d at 1362. In ***Brown v. Illinois***, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the United States Supreme Court set forth five factors for determining whether a confession, obtained subsequent to an illegal arrest, is admissible. "The weight to be given each of these factors will necessarily vary with the circumstances of each case." ***Henry***, 486 So. 2d at 1213. "However, the State bears the burden of proof for each factor as well as the burden of persuasion that the factors suggesting admissibility outweigh those suggesting inadmissibility." ***Id.*** We now address the five factors as set forth in ***Brown***.

### (1) The giving of the *Miranda* warnings and the circumstances

¶12. "The *Miranda* warnings are an important factor to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest." ***Hall v. State***, 427 So. 2d 957, 959 (Miss. 1983)(citation omitted). We have previously held that "as a matter of common sense, the coercive impact of incarceration may dissipate with time" as a prisoner has had sufficient time to become acclimated to his surroundings. ***Id.*** at 960-61. In the present case, Conerly was held in a jail cell for two days before he received any *Miranda* warnings. Immediately after receiving the *Miranda* warnings, Conerly confessed to the burglary. Conerly was in continuous custody and did not consult a lawyer. Although it is unclear as to whether he spoke with his mother during this time, no other outside contact took place. Additionally, Conerly argues that he was innocent and only confessed out of fear for his mother and her house.

### (2) The temporal proximity of the arrest and the confession

¶13. As stated previously, Conerly was jailed for two days before he was given his *Miranda* warnings and confessed. As Conerly himself said, "I was already locked up, so I just went ahead and said I would confess, you know, that I had done it ...." Although it is true that the coercive environment of jail may dissipate over time, the facts of this case seem to indicate that the two-day waiting period may have very well been the reason for Conerly's confession. We find it very bothersome that threats were relayed to Conerly during this two day period. Although the State suggests (through Investigator McMurray's testimony) that Conerly would not have been allowed telephone contact with his mother during this time, the State offers no phone records or any other testimony which would indicate that no such communication took place. It should be reiterated, the State bears the burden of proof for each of the ***Brown*** factors. ***Henry***, 486 So. 2d at 1213.

### (3) The presence of intervening circumstances

¶14. The only intervening event which took place between the time of arrest and Conerly's confession was the alleged contact between Conerly and his mother, wherein she relayed to Conerly an anonymous threat to burn down her house if Conerly did not confess. In ***Taylor v. Alabama***, 457 U.S. 687, 691, 102 S.Ct. 2664, 2668, 73 L.Ed.2d 314 (1982), the U.S. Supreme Court held that the defendant's girlfriend, who was emotionally upset at the time of their visit, could affect the defendant's objectivity and exercise of free will. A similar conclusion may be reached in the present case. Certainly a threat to burn down Conerly's home, with his mother in it, hindered Conerly's objectivity and exercise of free will when he made his confession.

**(4) The purpose and flagrancy of the official misconduct; and (5) any other circumstances that seem relevant**

¶15. While we reserve judgment as to whether Conerly's arrest was legal, we can say without a doubt that the investigation conducted was totally inadequate. Conerly was held two days before he was given *Miranda* warnings. During this time, Conerly asserts he spoke with his mother, who relayed threats made to her and her home. The State never produced any information or phone records to support its contention that Conerly had no telephone privileges during the two days he was jailed.

¶16. After reviewing the facts of this case through the lens of *Brown*, we find the confession should be excluded under the "fruit of the poisonous tree" doctrine if the arrest warrant was illegally issued. The facts here are insufficient to break the causal chain between Conerly's arrest and confession.

## CONCLUSION

¶17. We remand this case to the Marion County Circuit Court for a determination of whether probable cause existed at the time for the issuance of the arrest warrant. Upon remand, if the circuit court should find no probable cause existed, then it shall deem the arrest warrant illegal, and Conerly's confession inadmissible under the "fruit of the poisonous tree" doctrine, and vacate its judgment and Conerly's conviction and sentence. If the circuit court finds probable cause for the issuance of the arrest warrant, it shall make this determination in an order.

¶18. **REMANDED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE, SMITH, WALLER, COBB AND DIAZ, JJ., CONCUR.**