MAXWELL, JUSTICE, FOR THE COURT:
 

 ¶ 1. Before his capital-murder trial, Laqunn Gary moved to suppress his confession, arguing he had not knowingly, intelligently, and voluntarily waived his
 
 Miranda
 
 rights.
 
 [1]
 
 The trial court denied his motion without a hearing. This was error. Because Gary had questioned the voluntariness of his confession, he had a due-process right to a suppression hearing. And the State had the burden to prove his confession was in fact voluntary. We remand this case to the trial court to conduct a hearing to determine the admissibility of Gary's confession.
 

 Background Facts and Procedural History
 

 I. Investigation
 

 ¶ 2. On February 11, 2012, the Jackson Police Department (JPD) received a call about a dead body. Someone had found seventeen-year-old Vizavian Trent Darby lying in the grass with a gunshot wound to his head. Darby was last seen leaving
 home in his mother's rental car. Police found the abandoned car two days later.
 

 ¶ 3. On February 14, 2012, JPD took Gary in for questioning. After advising him of his
 
 Miranda
 
 rights, Detectives Eric Smith and Patricia Wilder interviewed Gary. During this interview, Gary confessed to shooting Darby, abandoning the rental car, and hiding the gun he used to shoot Darby, as well as Darby's 9 mm pistol. After the interview, Gary led Detective Smith and another detective to the guns.
 

 ¶ 4. Gary and his friend were indicted for capital murder for unlawfully killing Darby during the course of a robbery.
 
 [2]
 

 See
 

 Miss. Code Ann. § 97-3-19
 
 (2)(e) (Rev. 2014).
 

 II. Pretrial
 

 ¶ 5. While Gary was awaiting trial,
 
 [3]
 
 Detective Smith was killed. Detective Smith was interviewing a suspect in an unrelated case when that suspect grabbed Detective Smith's gun and shot him. Detective Wilder was in the interrogation room and witnessed her partner Smith's murder.
 

 ¶ 6. Before his trial, Gary moved to suppress his written statement and confession. The thrust of Gary's argument was that he was only seventeen at the time and too immature to appreciate the constitutional rights he purportedly waived before the interview. With Detective Smith's death and unavailability as a witness in Darby's trial, the State subpoenaed Detective Wilder to testify. Specifically, the State intended to call Detective Wilder to testify at Gary's suppression hearing to show his confession was voluntary.
 

 ¶ 7. But Detective Wilder did not want to testify. And an attorney she had retained to represent her in another matter moved to quash the State's subpoena. Detective Wilder's attorney argued she suffered from post-traumatic stress disorder (PTSD) from witnessing her partner's murder. And having to either watch and/or testify about Gary's recorded confession-which took place in the same or similar interrogation room where Detective Smith was shot-would damage her mental health. Detective Wilder's resistence to testifying prompted the State to file a pretrial motion to determine her availability as a witness.
 

 ¶ 8. On the Thursday before trial was set to begin on Monday, May 12, 2014, both the State's motion as well as Wilder's motion to quash the State's subpoena were brought for a hearing. At this hearing, Detective Wilder's therapist testified about Wilder's supposed PTSD and the potential harmful impact testifying might have on her.
 

 ¶ 9. Both the State and Gary informed the court that Detective Wilder's potential unavailability would impact Gary's suppression hearing, since the State intended to call Detective Wilder to prove Gary's confession was voluntary and to authenticate the video-recording of the confession. Gary's counsel reminded the court about Gary's pending suppression motion, urging an age-based challenge to the voluntariness of his
 
 Miranda
 
 waiver. At this point, a disagreement arose about Gary's true age. While Gary's counsel asserted he was seventeen when he confessed, the State insisted Gary was in fact eighteen, based on his birth date. Though the current hearing was about Wilder's availability to
 testify-not the admissibility of Gary's confession-Gary's counsel offered to put Gary on the stand for the limited purpose of confirming the year he was born.
 

 ¶ 10. From the stand, Gary testified he was born in November 1994, making him seventeen in February 2012. The trial court then permitted the State to cross-examine him about his age. The State showed Gary the
 
 Miranda
 
 waiver form and written statement, which listed his date of birth. Gary confirmed that he could read and write and that it was his signature on two of the pages. But he insisted the officers never asked him about his birthday. At this point, the State asked to show the video confession, suggesting that within the first thirty seconds of the video statement, Gary told Detective Smith and Detective Wilder he was born in 1993-making him eighteen, not seventeen. Over Gary's objection, the trial court permitted several minutes of the video to be played-up to when Gary was asked about his date of birth. Gary confirmed that he was the person in the video, that the video depicted him being interviewed by the two detectives, and that he had told the detectives he was born in 1993.
 

 ¶ 11. After Gary's brief testimony, the hearing shifted back to the issue of Detective Wilder's availability to testify. The hearing ended with the trial court taking the issue of Detective Wilder's availability under advisement.
 

 ¶ 12. On the morning of trial, the court announced that it had deemed Detective Wilder an unavailable witness. The court also confirmed it was denying Gary's motion to suppress his written statement and video-recorded confession.
 
 [4]
 
 Gary's counsel spoke up, arguing she had not been heard on his motion to suppress. And though the court agreed with Gary's counsel that Gary "was not fully heard on his motions" to suppress the written statement and video-recorded confession, the court still ruled his confession was voluntary.
 

 III. Conviction
 

 ¶ 13. At trial, the video confession was introduced through Deputy Chief Brent Winstead, the third detective who had witnessed parts of Gary's interview and had been with Gary when he led the police to the murder weapon. After hearing from multiple witnesses called by the State and defense, the jury found Gary guilty of capital murder. He was sentenced to life in prison without parole.
 

 Discussion
 

 ¶ 14. Though Gary alleges several errors on appeal, we address only his first-the trial court's denial of Gary's motion to suppress his written statement and video-recorded confession.
 
 [5]
 
 At a minimum, Gary argues, he was entitled to a suppression hearing, in which the State was required to put on evidence to meet its burden to make a prima facie case that the confession was voluntary. We agree.
 

 ¶ 15. "When the voluntariness of a confession is put into question, the defendant has a due process right to a reliable determination that the confession was in fact voluntarily given."
 
 Cox v. State
 
 ,
 
 586 So.2d 761
 
 , 763 (Miss. 1991) (citing
 
 Stokes v. State
 
 ,
 
 548 So.2d 118
 
 , 121 (Miss. 1989) ). To protect this right, we have held that
 "[w]hen objection is made to the introduction of the confession, the accused is entitled to a preliminary hearing" outside the presence of the jury "on the question of the admissibility of the confession."
 
 Agee v. State
 
 ,
 
 185 So.2d 671
 
 , 673 (Miss. 1966).
 

 ¶ 16. But here, as the trial court acknowledged, there was no suppression hearing. And because there was no suppression hearing, the State was never required to meet its burden to make a prima facie showing that Gary voluntarily had waived his
 
 Miranda
 
 rights and that his confession was voluntary.
 
 See
 

 Cox
 
 ,
 
 586 So.2d at 763
 
 . In fact, the State was not required to put on any evidence at all or call any witnesses about the voluntariness of his
 
 Miranda
 
 waiver or his statement. Instead, the trial court relied on evidence introduced through Gary-over his objection-to rule Gary's confession was admissible. This was error, since the State "bears the burden of proving all facts prerequisite to admissibility [of a confession] beyond a reasonable doubt."
 

 Id.
 

 And only after the State makes its prima facie case does the defendant have to put on evidence of coercion or involuntariness.
 
 See
 

 Agee
 
 ,
 
 185 So.2d at 673
 
 ,
 
 as modified by
 

 Thorson v. State
 
 ,
 
 653 So.2d 876
 
 , 888 (Miss. 1994).
 

 Conclusion
 

 ¶ 17. Because the court did not require the State to make a prima facie showing that Gary's confession was voluntary, we have no option but to remand this case to the trial court to hold a suppression hearing to decide if Gary's confession was indeed admissible.
 
 See
 

 Jackson v. Denno
 
 ,
 
 378 U.S. 368
 
 , 394,
 
 84 S.Ct. 1774
 
 ,
 
 12 L.Ed.2d 908
 
 (1964) (remanding to the state court to conduct a constitutionally adequate suppression hearing);
 
 see also
 

 Conerly v. State
 
 ,
 
 760 So.2d 737
 
 , 742 (Miss. 2000) (remanding burglary case to the trial court for a probable-cause hearing, because no probable-cause determination had been made before admitting evidence found during the defendant's arrest). If, upon remand, the trial court determines Gary's confession is inadmissible, then the trial court shall vacate his conviction and order a new trial.
 
 See
 

 Conerly
 
 ,
 
 760 So.2d at 742
 
 . If the trial court finds Gary's confession was in fact admissible, it shall enter an order to that effect.
 
 See
 
 id.
 

 ;
 
 see also
 

 Jackson
 
 ,
 
 378 U.S. at 394
 
 ,
 
 84 S.Ct. at 1790
 
 , 12 L.Ed.2d (finding that, if after a proper suppression hearing, the confession is found to be voluntary and admissible, there is "no constitutional necessity at that point for proceeding with a new trial").
 

 ¶ 18.
 
 REMANDED WITH DIRECTIONS.
 

 WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, COLEMAN AND BEAM, JJ., CONCUR. KITCHENS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KING, AND COLEMAN, JJ.
 

 Miranda v. Arizona
 
 ,
 
 384 U.S. 436
 
 ,
 
 86 S.Ct. 1602
 
 ,
 
 16 L.Ed.2d 694
 
 (1966) (requiring that, prior to a custodial interrogation, the person be warned he has a right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed).
 

 The pair were further charged with using a firearm during the commission of a felony, in violation of Mississippi Code Section 97-37-37 (Rev. 2014).
 

 For reasons unclear from the record, Gary was tried by himself.
 

 Apparently, the court had emailed the parties over the weekend, informing them of its decision on the two motions. So the pronouncement from the bench was to place in the record the court's rulings and reasoning.
 

 Gary also claims the evidence was insufficient to convict him of capital murder and that his guilty verdict is contrary to the overwhelming weight of the evidence. He also broadly asserts "cumulative errors" require a new trial.